# IN THE COURT OF APPEALS OF IOWA

No. 14-1000
Filed February 24, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ALONZO RAY STOKES,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly,

Judge.

Alonzo Stokes appeals his conviction for robbery in the first degree.

**AFFIRMED.**

Mark C. Smith, State Appellate Defender, Shellie L. Knipfer, Assistant

Appellate Defender, and Angela J. O'Kane, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney

General, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

Alonzo Stokes appeals his conviction for robbery in the first degree, asserting insufficient evidence supports his conviction. He claims the two witnesses who testified against him were accomplices, and their testimony was not corroborated; however, we conclude sufficient evidence supports the conviction because, even if the jury found the witnesses to be accomplices, the record shows sufficient evidence that corroborates the witnesses' testimony. Stokes further argues the district court abused its discretion in (1) failing to submit an interrogatory to the jury as to whether two witnesses were accomplices and (2) answering a jury question during deliberations by simply directing the jury to reread an explanatory instruction. We conclude the district court did not abuse its discretion in either instance. Consequently, we affirm Stokes's conviction for robbery in the first degree.

**I. Factual and Procedural Background**

On January 3, 2013, two teenage boys—C.L. and K.M.—were on Joshua Spears's porch for a pre-arranged meeting to purchase marijuana. After C.L. knocked on the door, Spears looked through the curtain to ascertain who was on his porch. When Spears opened the door, two adult men rushed past the teens and into the residence, one with an assault rifle in his hands. Both were wearing ski masks. While attempting to flee, Spears was shot in the arm, after which one of the men demanded money and drugs. Spears told the man where to find the items and then ran out of the house through the back door. Spears testified he

thought he heard one additional person in the house but stated the one who shot him was a "lightly darker [sic] African American," approximately six feet tall.[1]

After Spears fled the residence with a severely bleeding arm, a neighbor called the police. Upon investigation, the police discovered that two laptops, a handgun, and marijuana were stolen, none of which were recovered. The only physical evidence found at the scene was one .223 shell casing, which is consistent with the ammunition used for an AR-15 rifle. However, the rifle used in the robbery was never found.

C.L. testified that prior to the incident he and K.M. picked up Stokes—K.M.'s uncle—as well as an unknown male C.L. knew as "Jay," in C.L.'s father's truck. Jay was wearing a ski mask, and Stokes was wearing a black coat and had a firearm C.L. later described as a long black rifle. C.L. stated the two men were talking about robbing Spears, but C.L. replied they couldn't "do that to my guy . . . we're not going to do it."[2] While he and K.M. were waiting on the porch, the two men rushed past them into Spears's residence—with Stokes carrying a firearm—after which C.L. heard a "boom." Both he and K.M. ran back to the truck, waited for approximately thirty seconds, and Stokes and the other man returned to the truck carrying bags. C.L. then drove to a residence and dropped the two men off; however, the men left one of the bags, which contained laptops, in the truck. C.L. and K.M., shaken up from the incident, drove to a friend's

---

[1] In an interview with Officer Chip Joecken, Spears also asserted that C.L. had entered the residence, though at trial he declined to say he was sure C.L. had entered the house.

[2] C.L. was familiar with Spears as he had purchased marijuana from Spears for the past several years. On January 3, 2013, C.L. contacted Spears twice before the robbery, both times purchasing marijuana.

house and stayed the night. Wanting to distance himself from the incident and the stolen items, C.L. gave the friend the laptops.

The next day, C.L. turned himself into the authorities. C.L. was charged with attempted murder, robbery in the first degree, and burglary in the first degree. In June 2013, C.L. pled guilty to first-degree theft and agreed to testify against Stokes. His statements to police, his deposition testimony, and his trial testimony all differed. To the police he admitted both he and K.M. were involved in the robbery and stated he grabbed Spears's marijuana. During another police interview, he denied knowing the men who rushed into Spears's home. In the deposition taken in August 2013, he stated Stokes had been driving the vehicle and he had not seen any firearms. At trial he testified he had driven the vehicle, had told Stokes not to rob Spears, and lied to the officers and in his deposition because he was scared of the consequences because of people who "knew where [he] live[d]." C.L. characterized his previous statements to police as "a lie" and the statements he gave in the deposition as "garbage." However, he also agreed with defense counsel on cross-examination that he aided in the theft by helping Stokes and the other man get away from the scene without contacting the police and then disposing of the stolen laptops.

K.M.'s testimony was largely consistent with C.L.'s recitation of the events at trial. Specifically, K.M. confirmed C.L.'s statement that Stokes got in the vehicle carrying a rifle, which he later identified as an AR-15 type gun; C.L. had insisted the two men should not rob Spears, and Stokes had agreed not to do so. Acknowledging he helped the men drive away from the scene, K.M. pled guilty to first-degree theft in exchange for his testimony against Stokes and, like C.L.,

stated he had not been fully truthful with the authorities regarding his previous recitation of the events that took place.

On March 22, 2013, Stokes was charged with attempt to commit murder, in violation of Iowa Code section 707.11 (2013); burglary in the first degree, in violation of Iowa Code section 713.3; and robbery in the first degree, in violation of Iowa Code section 711.2. Trial began on March 31, 2014, and continued until April 4, 2014. Following the close of evidence, Stokes moved for judgment of acquittal, which the court denied. Prior to jury deliberations, Stokes requested that the district court submit interrogatories to the jury to ascertain whether C.L. and K.M. were accomplices. The court declined to do so. During deliberations, the jury sent a note, and both the State and defense counsel struggled to ascertain its intent. Defense counsel thought it requested the court to clarify whether certain testimony had been properly corroborated. Stokes, through counsel, requested the court answer "no," but the court referred the jury to the instructions regarding accomplice testimony and corroboration.

On April 4, 2014, the jury found Stokes guilty of robbery in the first degree, acquitting him of the two other charges. Stokes moved in arrest of judgment and for a new trial, but after a hearing, the district court denied both motions. On June 9, 2014, the court sentenced Stokes to a term of incarceration not to exceed twenty-five years. Stokes appeals.

## II. Standard of Review

We review claims regarding the sufficiency of the evidence for correction of errors at law. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). When a defendant challenges the district court's answer to a jury's question, or its

decision regarding whether to submit a special interrogatory, we review for an abuse of discretion. *State v. McCall*, 754 N.W.2d 868, 871 (Iowa 2008).

### III. Sufficiency of the Evidence

Stokes first claims sufficient evidence does not support his conviction. He asserts the State failed to prove he was present at the robbery or had any involvement. Specifically, he argues, the district court should have determined C.L. and K.M. were accomplices as a matter of law; therefore, their testimony needed to be corroborated before it could be relied upon. He asserts there was no corroboration, and therefore, sufficient evidence does not support the jury's guilty verdict.

With regard to sufficiency claims, we view the record in the light most favorable to the non-moving party—here, the State—and make all legitimate inferences and presumptions that may be reasonably deduced from the evidence. *Quinn*, 691 N.W.2d at 407. If substantial evidence supports the verdict, we will affirm. *Id.* Evidence is substantial if it would convince a reasonable trier of fact Stokes is guilty of robbery in the first degree[3] beyond a reasonable doubt. *Id.*

---

[3] To prove Stokes committed first-degree robbery, the State was required to establish that Stokes:

        1. On or about the 3rd day of January, 2013, the Defendant had the specific intent to commit a theft.

        2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the Defendant:

            a. Committed an assault on Joshua Spears, OR

            b. Threatened Joshua Spears with, or purposely put Joshua Spears in fear of immediate serious injury.

        3. The Defendant was armed with a dangerous weapon.

*See* Iowa Code §§ 711.1 & .2.

If a witness is an accomplice, their testimony must be corroborated by other evidence to support a conviction. Iowa R. Crim. P. 2.21(3). If the facts are disputed or give rise to different inferences, the question of whether a witness is an accomplice is an issue for the jury. *State v. Harris*, 589 N.W.2d 239, 241 (Iowa 1999). "The requirement of corroborative evidence is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime." *State v. Ware*, 338 N.W.2d 707, 710 (Iowa 1983). The strength of the corroboration need not be extensive: "In order to be corroborative, the evidence must be such that it verifies the accomplice's testimony in significant part. Not every fact need be corroborated." *State v. Martin*, 274 N.W.2d 348, 350 (Iowa 1979).

Both boys testified they saw Stokes with a long black rifle, which K.M. later indicated was an AR-15 type of gun. The casing found at the scene corroborated this testimony, as well as connected Stokes with the commission of the crime. Additionally, Spears testified the person who shot him was an African-American man and approximately six feet tall, which generally fits Stokes's physical description. C.L. further testified he saw the two robbers wearing masks when they rushed past him into Spears's residence, and Spears stated the man who shot him was wearing a ski mask. With regard to the stolen property, Spears testified two laptops were missing from his residence, and C.L. stated the bag Stokes left in the car contained two laptops, which he then gave to his friend. Evidence need not be "strong as long as it can fairly be said that it tends to connect the accused with the commission of the crime." *State v. Barnes*, 791 N.W.2d 817, 824 (Iowa 2010). This evidence corroborates the testimony of C.L.

and K.M.; therefore, even if they were accomplices, their testimony could be relied upon.

Consequently, the evidence presented in the case—which consists of the testimony of C.L., K.M., and Spears, as well as the bullet casing found in Spears's residence—supports the jury's guilty verdict. *See Quinn*, 691 N.W.2d at 407 (noting the facts are viewed in the light most favorable to the guilty verdict, and all reasonable inferences are made in favor thereof). Consequently, we conclude sufficient evidence supports the guilty verdict, and we affirm Stokes's conviction for robbery in the first degree.

## IV. Special Interrogatory

Stokes further argues the court erred when it declined to submit the special interrogatory requesting the jury to decide whether or not C.L. and K.M. were accomplices. He asserts the district court should not have discretion to decline to submit interrogatories at the defendant's request and, furthermore, he was prejudiced by the court's denial of his request.

Iowa Rule of Criminal Procedure 2.22(2) states:

[The jury] must also return with the general verdict answers to special interrogatories submitted by the court upon its own motion, or at the request of the defendant in prosecutions where the defense is an affirmative one, or it is claimed any witness is an accomplice, or there has been a failure to corroborate where corroboration is required.

However, the court is not required to put forth interrogatories regarding accomplice testimony solely at the defendant's request. *Harris*, 589 N.W.2d at 242.

The *Harris* decision controls, and it is not our place to overturn such a decision. *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011) (noting the court of appeals is not at liberty to overturn a decision issued by the supreme court). Therefore, we will examine whether the district court abused its discretion when it declined Stokes's request.[4]

For this court to find reversible error in the district court's failure to submit an interrogatory regarding accomplice testimony, Stokes must establish he was prejudiced by the court's action. *See id.* The jury instruction regarding accomplice testimony stated:

> An "accomplice" is a person who knowingly and voluntarily cooperates or aids in the commission of a crime.
> A person cannot be convicted only by the testimony of an accomplice. The testimony of an accomplice must be corroborated by other evidence tending to connect the Defendant with the crime.
> If you find both [C.L.] and [K.M.] are accomplices, the Defendant cannot be convicted only by their testimony. There must be other evidence tending to connect the Defendant with the commission of the crime. Such other evidence, if any, is not enough it if just shows a crime was committed. It must be evidence tending to single out the Defendant as one of the people who committed it.

This is an accurate statement of the law; given this proper instruction and pursuant to *Harris*, the district court had the discretion to deny Stokes's request to submit an interrogatory asking the jury to decide whether C.L. and K.M. were accomplices. *See Harris*, 589 N.W.2d at 242 (noting a court may "affirm a conviction based on the testimony of an alleged accomplice in the absence of corroboration if a properly instructed jury might have found from the evidence

---

[4] While Stokes gives a brief statement regarding the violation of constitutional rights, he does not elaborate or provide argument; nonetheless, we note our conclusions do not conflict with constitutional due process protections. *See* Iowa R. App. P. 6.903(2)(g)(3).

that the witness was not an accomplice").  Therefore, the court did not abuse its discretion when declining to submit the special interrogatory.

Additionally, as noted previously, the testimony of C.L. and K.M. was corroborated such that, even if they were found to be accomplices, their testimony could be relied on to sustain the verdict.  *See id.*; *see also Barnes*, 791 N.W.2d at 824 (noting accomplice testimony may be relied upon by the jury as long as it is otherwise corroborated).  Therefore, any additional instruction or an interrogatory requesting a finding of whether the teenagers were accomplices would not have had an effect on the verdict, and thus, Stokes is not able to establish prejudice.  *See Harris*, 589 N.W.2d at 242.  Consequently, we find no abuse of discretion in the district court's ruling.

**V. Jury Question**

Stokes's final argument claims the district court erred when it declined to answer in the negative a question submitted by the jury, as Stokes had requested.  He contends the nature of the jury's question showed the applicable instructions were not adequate, such that the "jury missed the crucial step in corroboration that requires that the corroborating evidence must tie Stokes to the crime"; therefore, the court abused its discretion when referring the jury to instruction nine rather than "clarify[ing] that Spears's testimony did not properly corroborate C.L.'s testimony."

"The district court has a duty to instruct fully and fairly on the law applicable to all issues raised by the evidence."  *State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009).  When the jury asks a specific question during deliberations, the district court has the discretion to decide whether or not to

provide an answer. *See* Iowa R. Civ. P. 1.925; *see also* Iowa R. Crim. P. 2.19(5)(g) (noting the procedures governing jury questions).

The question submitted by the jury asked: "Does Joshua Spears's testimony that [C.L.] was present at the scene of the crime allow for the introduction into evidence of [C.L.]'s testimony, in spite of the fact that [C.L.] would otherwise be considered an accomplice under paragraph 2 of instruction 24?" After agreeing the question was unclear, Stokes's counsel opined that the answer should be "no."[5] The court declined to so instruct the jury and responded that the jury should review instruction nine, which read: "You must determine the Defendant's guilt or innocence from the evidence and the law in these instructions. You must consider all of the instructions together. No one instruction includes all of the applicable law."

As the court noted, and both trial attorneys agreed, the question was subject to different interpretations. Answering "no" could signal very different things, such as "no, Spears's testimony does not corroborate that of C.L.'s" or "no, the testimony could not be introduced." Such an answer would not serve to clarify any issue for the jury, particularly given the instruction regarding accomplice testimony was accurate and clear. *See Schuler*, 774 N.W.2d at 297. Consequently, we conclude the district court did not abuse its discretion when answering the jury's question by referring them to instruction nine. *See State v.*

---

[5] Although trial counsel appeared to initially accede to the court's decision to refer the jury to the instructions, we find the issue minimally preserved so as to address the merits. Thus, we do not agree with the State's position that Stokes failed to preserve error because the issue was argued and the district court subsequently made a ruling. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (noting error is preserved when the court considers an issue and rules on it, even if the issue is only minimally addressed).

*Wissing*, 528 N.W.2d 561, 565 (Iowa 1995) (finding no abuse of discretion regarding the district court's decision not to further define an instruction that was a correct statement of the law).

Finding sufficient evidence to support the jury's verdict and no abuse of discretion with regard to the district court's rulings, we affirm Stokes's conviction for robbery in the first degree.

**AFFIRMED.**